IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

B.A., et al.                                                                                    PLAINTIFF

V.                                                                    CAUSE NO.: 1:13CV170-SA-DAS

MISSISSIPPI HIGH SCHOOL
ACTIVITIES ASSOCIATION, INC., et al.                                              DEFENDANTS

MEMORANDUM OPINION

Plaintiffs filed their Complaint in the Lee County Chancery Court seeking to enjoin the Mississippi High School Activities Association (MHSAA) from enforcing an association rule prohibiting student athletes from competing on both a school and non-school (independent) team in the same sport during the academic year. Defendants' filed a Motion to Dismiss, or Alternatively, Motion for Summary Judgment [15]. A hearing was held on this matter and the Court DENIES Plaintiffs' request for an injunction, GRANTS Defendants' Motion for Summary Judgment, and DISMISSES this case.

*Factual and Procedural History*

Prior to the 2013-2014 school year, the MHSAA included in its Handbook a rule which limited the number of players for a high school sport who could also play on the same independent team. Specifically, the pre-2013 rule stated as follows:

> During the school's sports seasons an independent team can be made up of no more than 50% of the number that make up the starting number of players for that sport from any one school. The penalty for this violation is the loss of eligibility of all participants from the school that participated on the team. School personnel cannot coach an independent team during the school year. NOTE: Only 4 players per school may participate on a baseball or fast pitch softball team, 2 basketball players, 5 soccer or slow pitch players, etc. Exception: five starters in soccer must be identified by the coach. Independent teams may participate in summer league post-season play through August.

The exception for soccer applied the 50% Rule to only the number of starters as opposed to players. According to Plaintiffs, for the sport of soccer, this allowed high school soccer players who attended the same school to also play on the same independent team provided no more than five starters, as designated by the high school coach, were on the same independent team. The soccer exception to the 50% Rule was adopted in 2006 and was continuously applied through the 2012-2013 school year.

On November 1, 2012, a revised 50% Rule was voted on by the forty-one member MHSAA Legislative Council. The measure removed the soccer exception from the prior 50% Rule and interpreted that rule to apply to, essentially, the entire school year. The new rule, 6.2.1, passed unanimously and was published on the MHSAA's members-only website. The Legislative Council and fifteen-member Executive Board convened on February 7, 2013, for the final unanimous vote adopting Rule 6.2.1.

In addition to the new 50% Rule, the MHSAA also defined the term "sports season" as "that period beginning with the opening date of practice as called by each coach within the official starting dates and extending through the school team's last game of the season to include playoff games and the state championship, if applicable, in a particular sport." As to soccer, the MHSAA Sports Calendar of Events lists the first date of soccer practice to begin on October 21, 2013, and the state finals are scheduled for February 7-8, 2014. The independent team soccer season, nationally, runs from August through May. Thus, under the new Rule 6.2.1, student athletes' ability to play soccer on school and non-school teams was substantially impacted as the independent league schedule overlaps the school year almost completely.

It is this new rule, Rule 6.2.1, which is challenged by Plaintiffs. That Rule eliminates the soccer exception and states:

> During the school's sports seasons an independent team (i.e.: club team, recreational team, select team, elite team, all-star team) can be made up of no more than 50% of the number that make up the starting number of players for that sport from any one school. (Ex.: 4 players from one school may participate on a baseball or fast pitch softball team, 2 basketball players, 5 soccer or slow pitch softball players.

Plaintiffs claim that Rule 6.2.1, prevents Plaintiffs and other similarly situated student athletes from participating on both a school and non-school team in the same sport during the academic year. Accordingly, Plaintiffs contend that the 50% Rule creates two classes of student athletes based on private activity outside of school activities: (1) student athletes who may associate with independent teams and interscholastic teams, thereby having the opportunity for additional training and development in the sport of their choice, and (2) student athletes who may associate with *either* high school or independent teams, thereby having limited opportunities for training and development in the sport of their choice. This, Plaintiffs allege, deprives those student athletes of their fundamental right to equal protection of the law as protected by the Fourteenth Amendment to the United States Constitution.

Plaintiffs have filed a Motion for Temporary Restraining Order, or Alternatively, a Preliminary Injunction [11] asking the Court to enjoin Defendants from enforcing Rule 6.2.1 to prevent student athletes from competing on both a school and non-school team in the same sport during the school year. Defendants have responded and filed a Motion to Dismiss, or Alternatively, a Motion for Summary Judgment [15], which is also ripe at this time. Plaintiffs assert that the motion is premature as no discovery has been conducted. However, Rule 56 allows a motion for summary judgment to be filed "*at any time* until 30 days after the close of all discovery." FED. R. CIV. P. 56(b) (emphasis added). Thus, Defendants' motion is not premature. Moreover, Plaintiffs have failed to indicate what discovery would be necessary to challenge the MHSAA's reasoning for the 50% Rule.

*Standing*

Defendants contend that the Complaint in this matter is fatally flawed in that Plaintiffs lack standing. In particular, Defendants contend that because there is no legally protected interest to participate in interscholastic athletics, the Plaintiffs have not presented a case or controversy, and the Complaint must be dismissed.

Article III courts have jurisdiction only over cases and controversies, Already, LLC v. Nike, Inc., --- U.S. ---, 133 S. Ct. 721, 726, 184 L. Ed. 2d 533 (2013), a requirement that a plaintiff fails to meet absent "standing—the 'personal interest that must exist at the commencement of the litigation.'" Davis v. FEC, 554 U.S. 724, 732, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008) (quoting Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). The United States Supreme Court has noted that "the irreducible constitutional minimum of standing contains three elements:" (1) an "injury in fact," which is a "concrete and particularized . . . invasion of a legally protected interest," Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); (2) "a causal connection between the injury and the conduct complained of[, i.e.,] the injury has to be fairly . . . trace[able] to the challenged action of the defendant, id., 112 S. Ct. 2130; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id., 112 S. Ct. 2130.

If Plaintiffs cannot show personal injury, then no Article III case or controversy exists, and a federal court is powerless to hear that grievance. Pederson v. Louisiana State Univ., 213 F.3d 858 (5th Cir. 2000). The individual injury requirement is not met by alleging "that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belongs and which she purports to represent." Warth v. Seldin, 422 U.S. 490, 502, 95 S. Ct. 2197, 45 L. Ed.

4

2d 343 (1975). Accordingly, "a named plaintiff in a class action who cannot establish the requisite case or controversy between him or herself and the defendants simply cannot seek relief for anyone . . . not for herself, and not for any other member of the class." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974).

The Court acknowledges that the Fifth Circuit has repeatedly rejected arguments that there is any protected interest in the separate components of the educational process, such as participation in interscholastic athletics. Walsh v. Louisiana High Sch. Athletic Ass'n, 616 F.2d 152 (5th Cir. 1980); Nevares v. San Marcos Consol. Indep. Sch. Dist., 1997 U.S. App. LEXIS 14955, *5-6 (5th Cir. Apr. 11, 1997). However, the cases cited by Defendants in support of their argument that Plaintiffs lack standing often have claims of both equal protection and due process violations. Because allegations of due process violations require an invasion of a constitutionally protected interest in life, liberty or property, Zinermon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990), many courts have deemed the eligibility determination applicants to lack standing on the basis that they lack a justiciable interest in the litigation because there is no legitimate claim of entitlement to participate in interscholastic athletics. See Walsh, 616 F.2d at 159. However, the Fifth Circuit has held with respect to standing challenges in equal protection cases:

> Discriminatory treatment at the hands of the government is an injury long recognized as judicially cognizable. And such injury is recognizable for standing irrespective of whether the plaintiff will sustain an actual or more palpable injury as a result of the unequal treatment under law or regulation.

Time Warner Cable, Inc. v. Hudson, 667 F.3d 630, 636 (5th Cir. 2012). The Hudson case involved a statute that facially discriminated against certain entities by extending a benefit to some and denying the benefit to others. Id. The Fifth Circuit held that "such discrimination can

constitute an injury because it positions similar parties unequally before the law; [thus] no further showing of suffering based on that unequal positioning is required for purposes of standing." Id.

Accordingly, for purposes of Plaintiffs' equal protection challenge, Plaintiffs have sufficiently alleged that they have standing to contest the 50% Rule by arguing that the Rule positions similar parties unequally before the law.

*Discussion and Analysis*

Despite surviving the standing hurdle, however, Plaintiffs are not entitled to the relief they seek through the preliminary injunction. The Fifth Circuit employs a well-known four-part test—which the applicant bears the burden of satisfying—for entitlement to a preliminary injunction: (i) "a substantial likelihood that [the applicant] will prevail on the merits"; (ii) "a substantial threat that [the applicant] will suffer irreparable injury if the injunction is not granted"; (iii) that the applicant's "threatened injury outweighs the threatened harm to the party whom he seeks to enjoin"; and (iv) that "granting the preliminary injunction will not disserve the public interest." Morell v. City of Shreveport, 2013 U.S. App. Lexis 14420, *4-5 (5th Cir. July 17, 2013) (citing Bluefield Water Ass'n, Inc. v. City of Starkville, Miss., 577 F.3d 250, 252-53 (5th Cir. 2009). "[A] preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." Bluefield Water Ass'n, 577 F.3d at 253 (citation and internal quotation marks omitted).

Because the Plaintiffs have failed to raise a genuine dispute of material fact as to their equal protection claims, the Court finds there is no likelihood of success on the merits and that judgment as a matter of law is proper.[1]

---

[1] Because the Court has considered extraneous evidence in its findings, the 12(b)(6) standard is inappropriate. See FED. R. CIV. P. 12(d). Therefore, the Court looks to Federal Rule of Civil Procedure 56 in determining whether

6

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. This is essentially a requirement that all persons similarly situated should be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). To demonstrate a violation of the Equal Protection Clause, a plaintiff must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose. Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 272-74, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979); Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-66, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977); Washington v. Davis, 426 U.S. 229, 239-42, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of its adverse effects upon an identifiable group." Feeney, 442 U.S. at 279, 99 S. Ct. 2282.

If a claim does not involve a suspect class or a fundamental right, courts review state action using a rational basis test. Delahoussaye v. City of New Iberia, 937 F.2d 144, 149 (5th Cir. 1991). Where, as here, the classification created by the regulatory scheme neither trammels fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest. See e. g., Parham v. Hughes, 441 U.S. 347, 350-53, 99 S. Ct. 1742, 60 L. Ed. 2d 269 (1979); City of New Orleans

---

summary judgment is warranted in this case. That Rule provides that summary judgment is proper when the evidence reveals there is no genuine dispute of any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment . . . against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

v. Dukes, 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976); Jackson v. Marine Exploration Co., 583 F.2d 1336, 1346 (5th Cir. 1978). The parties agree that rational basis scrutiny should apply here.

Under rational-basis scrutiny, the regulation is "accorded a strong presumption of validity" and "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Heller v. Doe, 509 U.S. 312, 319-20, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (quotation marks and citations omitted). Although better alternatives may exist, the MHSAA is not required to choose the least restrictive method of achieving its desired ends.

The "classifications" as alleged by Plaintiffs to be created by Rule 6.2.1 are: (1) student athletes who may associate with independent teams and high school teams during the school year; and (2) student athletes who may associate with either high school or independent teams during the school year. The MHSAA, through Executive Director Don Hinton's affidavit, has averred that the purpose of the 50% Rule is to "promote fair competition between all member schools," "prevent[] a particular school from specialization in one sport by having all the starters on a specific team play together year round on an independent team," and "encourage[] students to participate in as many sports as they can, which increases the number of students playing sports rather than increasing the quality of a select few." Hinton reiterated at the hearing that the reason for the 50% Rule was to promote fair competition among the member schools, and encourage student participation.

Based on Hinton's affidavit, as well as his own and other testimony elicited at the hearing, the Court finds that Rule 6.2.1 is rationally related to the purposes averred by MHSAA. It can be reasonably inferred that the 50% Rule prevents specialization in one sport by requiring

8

the displacement of at least half of the team in independent play. This may also promote fair competition among member schools for the same reason. Andrew Mackin, the father of a Starkville Plaintiff as well as the Team Manager of an independent team in Starkville, explained the structure of team soccer for the Court. He indicated that there was an advantage to a soccer team being able to play together for an extended period of time and noted that the teams were better because of the longevity that the players were together. Likewise, if a student is prevented from joining the interscholastic team because of outside participation on an independent team, that student athlete would not then be prevented from participating in another interscholastic sports team, thereby increasing the number of students playing sports. The classifications of students created by the 50% Rule are therefore rationally related to the state's valid and legitimate interest as stated above. Walsh, 616 F.2d at 160.

Further, the Fifth Circuit has considered many variations of claims alleging infringement of constitutional rights in the context of eligibility rules for competition in interscholastic leagues and has uniformly rejected constitutional challenges to those rules. See, e.g., Hardy v. Univ. Interscholastic League, 759 F.2d 1233, 1234 (5th Cir. 1985) ("Participation in interscholastic athletics is not an 'interest' protected by the Due Process Clause."); Niles v. Univ. Interscholastic League, 715 F.2d 1027, 1031 (5th Cir. 1983) ("Forthrightly stated, the gravamen of the complaint here is the denial of the right to participate in interscholastic sports, not the rights to interstate travel, to earn a living or to live with or apart from one's family."); Walsh, 616 F.2d at 158-60 (upholding a rule that "places an indirect and incidental burden on the free exercise of the religious beliefs of these parents" because "[a] student's interest in participating in a single year of interscholastic athletics amounts to a mere expectation" that "falls outside the protection of due process" (quotation marks omitted)). But cf. La. High Sch. Ath. Ass'n v. St. Augustine High

Sch., 396 F.2d 224, 228-29 (5th Cir. 1968) (disallowing racial discrimination in the admission of schools to the Louisiana High School Athletic Association).

Plaintiffs states that the "Complaint does not rely on any right to participate in interscholastic sports," only that the Rule is challenged because it treats student athletes differently based on identical conduct. While Plaintiffs claim their lawsuit is not an eligibility determination challenge but a suit to redress the denial of equal protection by a state actor, Plaintiffs' alleged injury is their right to participate in and be eligible for interscholastic competition. As the Fifth Circuit has previously stated:

> [W]e are not super referees over high school athletic programs. Questions about eligibility for competition may loom large in the eyes of youths, and even their parents. We do not disparage their interest in concluding, as here, that these issues are not of constitutional magnitude. Behind this observation rest important values of federalism and the reality that the mighty force of the constitutional commands ought not to be so trivialized.

Hardy, 759 F.2d at 1235 ("Participation in interscholastic athletics is not an 'interest' protected by the Due Process Clause.").

As all parties agree that rational basis scrutiny applies to this equal protection claim, MHSAA has stated a legitimate state interest, and the Rule is rationally related to meet those interests, the Court finds that summary judgment is appropriate as Plaintiffs' have failed to put forth any constitutional violation.

*Conclusion*

Plaintiffs have standing to bring this claim under the Equal Protection Clause as they have adequately alleged that a state-adopted rule creates separate classes of participants. However, Plaintiffs' claims are dismissed as a matter of law as the Rule adopted by the MHSAA is rationally related to the legitimate governmental interest of promoting fair competition in schools.

SO ORDERED, this the 18th day of October, 2013.

                                               **/s/ Sharion Aycock**
                                               **U.S. DISTRICT JUDGE**